IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JEREMY MATTHEW JEFFERS,

        Plaintiff,

v.                          CIVIL ACTION NO.   3:22-0268

ADMINISTRATOR CARL ALDRIDGE,
individually and in his official capacity;
C. O. JOHN DOES I-IX, individually and in their official capacities;
THE WEST VIRGINIA DIVISION OF CORRECTIONS AND
REHABILITATION, an agency of the State of West Virginia; and
JOHN DOE X, unknown person or persons,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant West Virginia Division of Corrections and Rehabilitation (WVDCR) and Carl Aldridge's Motion to Dismiss. ECF No. 11. Upon consideration of the parties' briefs, the Court **GRANTS** the motion. The Court also **DIRECTS** Plaintiff Jeremy Matthew Jeffers to substitute as parties any individuals he believes are represented by John Does I-IX and/or John Doe X.

**I.
FACTUAL BACKGROUND**

This case was removed from the Circuit Court of Kanawha County, West Virginia on June 27, 2022, based upon federal question jurisdiction. *See* 28 U.S.C. § 1331 (providing for federal question jurisdiction) and § 1441(a) (removal of civil actions generally). In his Complaint, Plaintiff alleges that he was beaten while held as a pretrial detainee at the Western Regional Jail (WRJ) on March 28-29, 2022. *Compl.* ¶2. Specifically, Plaintiff claims that Correctional Officer

Pringle chastised and made fun of him and unjustifiably required him to wear a suicide prevention suit. According to Plaintiff, Officer Pringle also handcuffed him behind his back and, without provocation, tripped and/or pushed him face first to the floor deck, where he laid for thirty to thirty-five minutes. During that time, other "known and unknown individual Defendants constantly and consistently beat, kicked, battered and, on several occasions, slammed Plaintiff's face on the deck causing serious permanent injuries and scarring." *Id.* Plaintiff claims he was called disparaging names and ordered to say disparaging things about himself. *Id*. In addition to Correctional Officer Pringle, Plaintiff named Correctional Officers Irwin, Baker, and Evans and Correctional Officers John Does I through IX as Defendants.

In his Complaint, Plaintiff also alleges there is an extensive history and continuing practice and pattern of frequent abuse by correctional officers at the WRJ. *Id.* ¶4. Furthermore, the WVDCR, which is the governmental body that operates the WRJ, and its supervisory personnel have been deliberately indifferent to the abuse and harassment at the facility and have allowed it to continue. *Id.* Plaintiff asserts that the WVDCR, Mr. Aldridge, who is the administrator at the WRJ, and John Doe X negligently permitted the conduct to occur and breached their duty to provide a safe facility by properly staffing, hiring, training, retaining, and supervising the correctional officers. *Id.* ¶¶9-11.[1]

---

[1]Plaintiff asserts "John Doe X" includes "unknown individual correctional employees" who negligently hired, retained, trained, supervised, and failed to intervene and protect him, and includes "any person who concealed the actions of the individual Defendants and/or facilitated their wrongful and actionable acts and failed to intervene on [his] behalf[.]" *Id.* ¶6.

In Count One, Plaintiff alleges that the "individual Defendants"[2] deprived him of his constitutional rights by subjecting him to cruel and unusual punishment in violation of federal and state constitutional rights. *Id.* ¶¶21-23. In Count Two, Plaintiff appears to make a claim for intentional infliction of emotional distress by asserting the acts of the individual Defendants were so severe it caused him to suffer severe emotional distress, warranting compensatory and punitive damages. *Id.* ¶¶27-28. In Count Three, Plaintiff alleges Defendants WVDCR, Aldridge, and John Doe X are liable for:

> negligent retention of the individual Defendants . . ., by virtue of its negligent failure to properly supervise these Defendants, by reason of a failure to properly staff the facility and train employees including supervisory staff, by reason of a negligent failure to protect Plaintiff from foreseeable harm and by reason of its failure to take reasonable measures to prevent the unlawful and egregious conduct of the individual Defendants with regard to inmates in WRJ, including the Plaintiff.

*Id.* ¶31. In Count Four, Plaintiff simply lists nine state and common law causes of action. These are:

(a) Tort of harassment;

(b) Tort of unwelcome touching of his person, specifically, on occasions the individual Defendants perpetrated the same;

(c) Tort of civil battery;

(d) Tort of civil assault;

(e) Tort of intentional infliction of emotional distress;

(f) Tort of outrageous and atrocious conduct;

(g) Tort of invasion of his right to privacy;

(h) Tort of civil conspiracy;

---

[2] Plaintiff defines the "individual Defendants" as the named correctional officers and John Does I-X. *Id.* ¶2.

>     (i) other statutory and common law causes of action, including but not limited to, common law negligence against Defendants WVDCR, Aldridge and John Doe X.

*Id*. ¶33. Count Five does not allege a cause of action at all. Rather, it simples lists the damages Plaintiff believes he is entitled to receive. *Id.* ¶35. Count Six contains an allegation that all Defendants engaged in a civil conspiracy to avoid criminal prosecution of the individual Defendants and to protect the reputation of the WVDCR. *Id.* ¶¶37-39. Lastly, Count Seven is a cursory compilation of what appears to be multiple different causes of actions. Some of the claims are brief reiterations of his previous claims. He then adds in list form other causes of actions he believes exist, including "Respondent Superior, Law of Agency," outrageous conduct, invasion of privacy, and harassment. Without any additional elucidation, he also lists various provisions of the West Virginia Constitution (privacy rights, bodily integrity, security in one's person, due process, liberty interests, and cruel and unusual punishment),[3] and the United States Constitution (the Fourth, Eighth, Ninth, and Fourteenth Amendments). *Id*. ¶41(e).

In his Response to Defendants WVDCR and Aldridge's Motion to Dismiss, Plaintiff stated that he now has identified some of the John Doe correctional officers involved in the incident and, with agreement from defense counsel, he would file a motion to dismiss Defendants Irwin, Pringle, Baker, and Evans from this action and "identify" William Reed, Andrew Gram, Michael York, Michael Albright, Destiny Bush, and Stallone Pomeroy as Correctional Officers John Does I-VI. *Pl.'s Resp.*, at 2 n.1. Although Plaintiff made this representation on August 22, 2022, no motion was ever filed, and Defendants Baker, Evans, Irwin,

---

[3]*Id*. ¶41(d).

-4-

and Pringle were never served. Therefore, on October 3, 2022, this Court entered an Order directing Plaintiff to demonstrate good cause for not serving process on these Defendants. Plaintiff responded by stating that Defendants Irwin, Pringle, Baker, and Evans were misidentified and that he was amending his Complaint to reflect the correctional officers who were on duty at the time. In light of this representation, the Court entered an Order on October 17, 2022, dismissing Correctional Officers Irwin, Pringle, Baker, and Evans for failure to serve. In the over four months since that time, Plaintiff has yet to file an Amended Complaint. Therefore, the only Defendants currently named in the Complaint are Defendants WVDCR, Aldridge, and Correctional Officers John Does I-IX and John Doe X.[4]

In Defendants WVDCR and Aldridge's Motion to Dismiss, they raise a myriad of reasons why Plaintiff's claims against them should be dismissed. In his Response, Plaintiff greatly narrows the issues by agreeing to voluntarily dismiss all claims against these two Defendants except "for negligent hiring, negligent training, negligent retention and negligent supervision as well as his claims of vicarious liability/*respondeat superior* concerning the alleged intentional torts of the individual Defendants[.]" *Id.*, at 4. Thus, the Court need only resolve whether these claims must be dismissed for failing to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.
## STANDARD OF REVIEW

Pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts must look for "plausibility" in the complaint. 550 U.S. at 556-57. This standard requires a plaintiff to set

---

[4]Plaintiff has named Defendants Aldridge and Correctional Officers I-IX in both their official and their individual capacities.

forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level[.]" *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679.

If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

### III.
### DISCUSSION

In their motion, Defendants WVDCR and Aldridge argue that Plaintiff's *respondeat superior* and vicarious liability claims against them must be dismissed because they have immunity as stated by the West Virginia Supreme Court's in *West Virginia Regional Jail & Correction Facility Authority v. A.B.*, 766 S.E.2d 751 (W. Va. 2014). In *A.B.*, the court considered, *inter alia*, if the West Virginia Regional Jail and Correctional Facility Authority (WVRJCFA) could be held liable under a theory of *respondeat superior* for an alleged sexual assault by a correctional officer. 766 S.E.2d at 764. To resolve whether immunity exists, the court held that the first step is to determine if "the nature of the governmental acts or omissions" giving rise to the suit "constitute[s] legislative, judicial, executive or administrative policy-making acts or otherwise involve discretionary governmental functions." *Id*. at 766. If it is a legislative, judicial, executive, or administrative policy-making act, there is absolute immunity. However, if discretionary functions are involved, the court then must ask whether the plaintiff has shown a "violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive." *Id.* at Syl. Pt. 11. If not, "the State and its officials or employees charged with such acts or omissions are immune from liability."

*Id*. On the other hand, "[i]f the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of *respondeat superior* along with the public official or employee." *Id*. at Syl. Pt. 12.

Upon considering the facts before it, the West Virginia Supreme Court recognized that the functions of a correctional officer are largely discretionary and that the plaintiff's claim of rape is a violation of a clearly established law. *Id*. at 768. Therefore, the only thing left to consider was whether the correctional officer "was acting within the general scope of his authority and employment." *Id.* While generally the issue of whether someone is acting within the scope of employment is a jury issue, the court is not precluded from deciding the issue as a matter of law when the facts are not disputed and "'the relationship between an employee's work and wrongful conduct is so attenuated that a jury could not reasonably conclude that the act was within the scope of employment.'" *Id*. (quoting *Mary M. v. City of Los Angeles*, 814 P.2d 1341, 1347 (Cal. 1991)). Of critical importance is the purpose of the act or omission. *Id.* Additionally, the court should consider whether "the conduct is 1) *of the kind he is employed to perform*; 2) occurs within the authorized time and space limits; 3) it is actuated, at least in part, by a *purpose to serve the master*, and 4) if force is used, the *use of force is not unexpectable by the master*." *Id.* at 769 (citing Restatement (Second) of Agency § 228 (1958) (emphasis in *A.B.*; footnote omitted)). In applying this criteria to the facts before it, the court found that the correctional officer's alleged criminal acts were not within the scope of his employment. *Id.* at 769-72.

As in *A.B.*, this Court has no difficulty finding that the allegations in the Complaint demonstrate a violation of a clearly established right. Specifically, Plaintiff alleges, *inter alia*, that he was handcuffed behind his back and that, without provocation, he was tripped and/or pushed face first onto the deck. Thereafter, he asserts he was brutally beaten, kicked, and slammed face first on the deck several times by the correctional officers. Certainly, a reasonable official would understand that these alleged actions would violate Plaintiff's clearly established right to be free from excessive force. *See Wernert v. Green,* 419 F. App'x 337, 342 (4th Cir. 2011) (stating it is "clearly established that [a] . . . pretrial detainee is protected from the use of excessive force" (internal quotation marks and citations omitted)); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (stating "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'" (citations omitted)).

Having found Plaintiff has alleged a violation of a clearly established right, the Court next must determine whether the correctional officers' acts occurred within the scope of their employment. Although Plaintiff in this case encourages the Court to allow a jury to decide whether the correctional officers were acting within the scope of their employment, the Court finds that, assuming the truth of the allegations, no reasonable juror could reach that conclusion. The brutal beating of a pretrial detainee without any provocation does not serve the purpose of the master and is not the type of force correctional officers are employed to use. Although their positions as a correctional officers may give them the opportunity to commit these acts, such opportunity does not bring those acts within the scope of employment. Indeed, in cases involving allegations of intentional torts, such as here, courts consistently and repeatedly have found such acts "do not fall within the scope of employment." *Crabill v. West Virginia Div. of Corr. & Rehab.*,

No. 2:22-CV-00013, 2022 WL 1696640, at *3 (S.D. W. Va. May 26, 2022) (internal quotation marks omitted); citing *Holcomb v. West Virginia Div. of Corr. and Rehab.*, Civ. Act. No. 2:20-cv-00767, 2021 WL 4429198, at *2 (S.D. W. Va. 2021) (finding use of chemical agent, slamming an inmate to the floor, and punching an inmate are intentional acts that are not attributable to the WVDCR; *Hughes v. White*, Civ. Act. No. 2:20-cv-00730, 2020 WL 7753104, at *3 (S.D. W. Va. Dec. 29, 2020) (finding qualified immunity existed for claim of vicarious liability for assault and battery by correctional officers); *Hamilton v. Hill*, No. 2:20-cv-00368, 2020 WL 3472420, at *2 (S.D. W. Va. June 25, 2020) (finding a claim of battery of an inmate by the unlawful use of pepper spray is an intentional act outside the scope of correctional officers' employment)). Likewise, in *Sanders v. Jones*, Civ. Act. No. 3:15-14196, 2016 WL 3512247, at *4 (S.D. W. Va. 2016), this Court dismissed claims of *respondeat superior* and vicarious liability where the plaintiff had alleged correctional officers brutally attacked him to the point of unconsciousness. Consistent with these cases, the Court finds as a matter of law that the conduct alleged here does not fall within the scope of the correctional officers' employment and Plaintiff's claim of *respondeat superior* and vicarious liability against Defendants WVDCR and Aldridge must be dismissed.

The Court now turns to Plaintiff's remaining claim of negligent hiring, training, retention, and supervision against Defendants WVDCR and Aldridge. In *A.B.*, the West Virginia Supreme Court also considered this issue and found the WVRJCFA was immune from liability. Despite no mention by the plaintiff in *A.B.* of a "bad actor" who negligently performed a duty on behalf of the WVRJCFA to supervise, train, and retain the alleged offending correctional officer, the court found these functions obviously were someone's responsibility and the WVRJCFA only could be held liable under a theory of vicarious liability. 766 S.E.2d at 772. Thus, the court applied

the *respondeat superior* and vicarious liability principles to the plaintiff's negligence claim. *Id.* In doing so, the Court found "that the broad categories of training, supervision, and employee retention . . . easily fall within the category of 'discretionary' governmental functions." *Id*. at 773 (citations omitted). Thus, if the WVRJCFA is shown to have "violated a clearly established right or law with respect to training, supervision, or retention of [the correctional officer], the WVRJCFA is not entitled to immunity." *Id*. at 774 (internal quotation marks and footnote omitted).

Although the court recognized that there were existing state regulations regarding training, supervision, and retention of correctional employees, the plaintiff in *A.B.* did not identify a single one that was violated which proximately caused the correctional officer's alleged bad acts. *Id.* (footnote omitted). Additionally, the plaintiff voluntarily dismissed her claims under the West Virginia Constitution and exempted the WVRJCFA from her claims under the United States Constitution. *Id.* To be clear, the court explained that the claim against the WVRJCFA rests on what the WVRJCFA did to violate a clearly established law, not what the correctional officer did. As a result, the court held the plaintiff's "failure to identify a 'clearly established' right which the WVRJCFA violated through its training, supervision, and retention of [the correctional officer] is . . . fatal to her claim." *Id*. at 775.

In the present case, Defendants similarly argue that the negligence claims against them must be dismissed because Plaintiff failed to adequately allege in his Complaint any specific statute, law, or regulation that they violated which proximately caused the correctional officers' bad acts. In fact, with respect to Defendant Aldridge, Defendants point out that the Complaint is completely devoid of any reference whatsoever to a specific statute, law, or regulation he

purportedly violated. Additionally, as to the WVDCR, the only reference Plaintiff made was to West Virginia Code § 31-20-9 *et seq.*, which was repealed in 2018.

In his Response to Defendants' arguments, Plaintiff makes a general claim that Defendants WVDCR and Aldridge violated clearly established law by not following the WVDCR's "policies, provisions and 'Mission Statement'" and by violating "various constitutional provisions." *Pl.'s Resp.*, at 11-12. Furthermore, he contends their acts were fraudulent, malicious, or oppressive by failing to protect him. *Id.* at 13. Plaintiff further asserts he will dismiss the negligence claims against these Defendants if there is no evidence to support them. *Id.* at 14. However, *A.B.* makes it very clear that Plaintiff must do more than allege a violation of some abstract right. Rather, he "'must make a 'particularized showing' that a 'reasonable official would understand what he is doing violated that right' or that 'in the light of preexisting law the unlawfulness' of the action was 'apparent.'" *Id*. at 776 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, the analysis focuses on what acts or omissions are attributable to Defendants WVDCR and Aldridge in relation to the negligent hiring, training, retention, and supervision.

Here, Plaintiff has not alleged in his Complaint any specific statute, law, rule, regulation, or policy regarding hiring, training, retention, and supervision in effect at the time of this event that were violated by Defendants WVDCR and Aldridge for which they could be held liable. It is not enough for Plaintiff to make conclusory allegations that Defendants WVDCR and Aldridge violated some unspecified clearly established law[5] or constitutional provision, or acted

---

[5] As stated by Defendants WVDCR and Aldridge, the only statute Plaintiff specifically cited

-12-

maliciously, fraudulently, or oppressively. Additionally, Plaintiff cannot bootstrap his negligence claims by asserting that, because the correctional officers allegedly violated a clearly established right, Defendants WVDCR and Aldridge also must have done something wrong. Indeed, as the West Virginia Supreme Court recognized in *A.B.*, even when there are sufficient policies and training in effect, sometimes bad actors do not follow the rules and "act[] for their own purposes[.]" *Id.* at 775. Moreover, as the court more recently stated in *West Virginia Division of Corrections v. P.R.*, No. 18-0705, 2019 WL 6247748 (W. Va. 2019) (unpublished), "'[s]imply making 'the skeletal assertion that if . . . [a correctional officer] were properly trained and supervised, the rape would not have occurred' is nothing more than an 'illusory and languid contention . . . [not] sufficient to overcome the State's immunity[.]'" 2019 WL 6247748, at *7 (quoting *A.B.*, 766 S.E.2d at 775 n.33).

In this case, the Court finds that Plaintiff's claim is little more than a bare allegation that he would not have been injured if Defendants WVDCR and Aldridge would have performed their jobs properly. However, as stated in *A.B.* and *P.R.*, Plaintiff must make more than a "skeletal" allegation to overcome immunity. As Plaintiff has not done so in this Complaint, the Court finds Plaintiff's negligent hiring, training, retention, and supervision claim is insufficient to overcome the broad nature of immunity. *See West Virginia State Police v. Hughes*, 796 S.E.2d 193, 198 (W. Va. 2017) ("qualified immunity is broad and protects all but the plainly incompetent or those who knowingly violate the law" (internal quotation marks and citations omitted)). Therefore, the Court **GRANTS** Defendant WVDCR and Aldridge's motion to dismiss this claim against them.

---

was repealed prior to the occurrence of these events.

## III.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant WVDCR and Aldridge's Motion to Dismiss Plaintiff's claim of *respondeat superior* and vicarious liability and his claim of negligent hiring, training, retention, and supervision. ECF No. 11. Additionally, given Plaintiff's representation that he is voluntarily dismissing the remaining claims against Defendants WVDCR and Aldridge, the Court **DISMISSES** those claims as well, leaving only Correctional Officers John Does I-IX and John Doe X as Defendants. Although Plaintiff stated long ago that he has identified the actual correctional officers involved in the incident, he has made no motion to substitute or amend his Complaint to add them as parties. Thus, in order to proceed with this matter, the Court **DIRECTS** Plaintiff to file **on or before March 6, 2023,** a motion to substitute or amend his Complaint to add these individuals or otherwise inform the Court how he intends to proceed with this matter.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: February 28, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE